UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **GORDON EUGENE BARNES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **5:16-cv-01040-AKK-SGC** |
| **CULLMAN COUNTY DETENTION** ) | |
| **CENTER,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Gordon Eugene Barnes, an Alabama state prisoner acting *pro se*, filed this action pursuant to 42 U.S.C. § 1983, alleging that the Cullman County Detention Center ("CCDC"), Sheriff Matt Gentry, Warden Adam Whitehead, a "Dr. Lyren," and the "day shift deputies" exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Doc. 12. After the magistrate judge entered a report recommending dismissal of all claims, *see* doc. 15 at 15, Barnes timely filed objections, *see* doc. 16. For the reasons stated below, each of Barnes's objections is due to be overruled.

### I.   BARNES'S ALLEGATIONS

As discussed in the Report and Recommendation, Barnes alleges that around 11:00 a.m. on April 28, 2016, he "slipped on a wet spot [at the Cullman County Detention Center], fell[,] and the corner of a post went between the pinky and ring

finger of [his] left hand breaking it." Doc. 12 at 5. A prison nurse named "Mike" arranged for Barnes's transport to the hospital for an "x-ray and treatment," and provided Barnes with an ice-pack "in the meantime." *Id.* Barnes was transported to the hospital at 1:40 p.m., "x-rayed, and then immediately and without treatment . . . returned to the detention center . . . ." *Id.* at 7 (emphasis omitted). Barnes alleges that he went "24 hours without receiving any kind of treatment" and "sent a message to medical threatening to sue if [he] did not receive immediate treatment." *Id.* That night, he filled-out a form requesting to see an orthopedic surgeon. *Id.*

After going "4 days without any kind of treatment," the prison staff took Barnes to see the orthopedic surgeon, who "buddy taped" Barnes's hand and scheduled a follow-up appointment for May 16, 2016. *Id.* Barnes alleges that the deputies "did not take [him] to [his] appointment" and that, when he reminded one deputy of his appointment, the deputy allegedly replied, "'Don't start this shit' and [']quit bothering me.'" *Id.* The deputies finally took Barnes to his follow-up appointment on May 26, 2016. *Id.* at 8.

Barnes pleads that "Sheriff Matt Gentry and Warden Adam Whitehead are ultimately responsible for all policies and procedures followed at the Cullman County Detention Center," *id.* at 7, and that Dr. Lyren, the "Cullman County Detention Center Doctor," has "never seen [him], never examined [him], and never gotten involved in his medical care," *id.* at 8 (emphasis omitted).

## II.     ANALYSIS

Barnes raises several objections to the magistrate judge's Report and Recommendation, which the court addresses as to each defendant below.[1]

### A. Cullman County Detention Center

The magistrate judge recommends the dismissal of all claims against the CCDC on the basis that a plaintiff cannot sue a county jail under Alabama law. Doc. 15 at 8–9 (citing *Dean v. Barber*, 951 F.2d 1210, 1214–15 (11th Cir. 1992)). This court agrees, and Barnes does not voice any objection. Accordingly, all claims against the CCDC are due to be dismissed.

### B. Sheriff Matt Gentry and Warden Adam Whitehead

The magistrate judge next recommends the dismissal of all claims against Sheriff Gentry and Warden Whitehead, both in their official and individual capacities. Doc. 15 at 10–12. First, as to any official capacity claims, sheriffs and deputy sheriffs — as executive officers of the State — are immune from suit pursuant to Article I, Section 14 of the Alabama Constitution. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) (citing, e.g., *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)). Barnes objects that Gentry and Whitehead "are not immune from lawsuit, because [he] [is] not suing the state." Doc. 16 at 2

---

[1] To the extent Barnes attempts to state a § 1983 claim for receiving a bill for his x-ray, *see* doc. 12 at 3, this claim is due to be dismissed as frivolous. As the magistrate judge states, "[a] prisoner does not have a 'general constitutional right to free healthcare' and may be required to 'bear a personal expense that he or she can meet and would be required to meet in the outside world.'" Doc. 15 at 15 (quoting *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997)).

(emphasis omitted). This objection is **OVERRULED** because, as executive officers of the state, *see Tinney*, 77 F.3d at 383, any action against Gentry and Whitehead in their official capacities is tantamount to a lawsuit against the state itself.

As to any individual capacity claims, the magistrate judge concluded that Barnes fails to allege facts showing that Gentry and Whitehead had any personal involvement in the alleged delay or denial of medical care, or, alternatively, that Barnes fails to plead facts giving rise to a viable deliberate indifference claim. Doc. 15 at 10–12 (citing *Case v. Riley*, 270 F. App'x 908, 911 (11th Cir. 2008)) (claims against supervisory personnel who did not personally participate in the acts complained of are not actionable under § 1983). Barnes objects on the basis that the on-duty nurse, "Mike," told Barnes that he would notify Whitehead and Gentry of his injuries, and that, "on the way back to the detention center [after Barnes received x-rays], when [Barnes] asked why [he] was not treated, they told me Warden Whitehead had ordered me returned to the jail 'immediately following x-rays, per Sheriff Gentry.'" Doc. 16 at 2. These allegations do not show that these defendants consciously disregarded a serious risk of harm to Barnes. Furthermore, to the extent Gentry and/or Whitehead directed staff to immediately return inmates to the jail following off-site appointments, Barnes fails to show that this practice constitutes a "policy or custom of instructing county jail employees to deny

4

adequate medical care." Doc. 15 at 11. For these reasons, Barnes's objections are **OVERRULED**, and all claims against Gentry and Whitehead are due to be dismissed.

**C. Dr. Lyren**

The magistrate judge next recommends the dismissal of all claims against Dr. Lyren on the basis that Barnes fails to plead any facts showing that Dr. Lyren subjectively knew of any serious risk of harm to Barnes. Doc. 15 at 12. Barnes objects, asserting that Dr. Lyren had actual knowledge because the nurse, "Mike," told Barnes that he was going to alert Dr. Lyren of Barnes's broken hand. Doc. 16 at 2. Barnes further contends that "Dr. Lyren by virtue of . . . his medical training, had knowledge of the risk of further serious injury, and disregarded that risk by not seeing to it that [Barnes] received immediate and proper treatment." *Id.* at 1 (emphasis omitted). These objections are **OVERRULED**, in part because Barnes's allegations do not show that the nurse actually informed Dr. Lyren about Barnes's injury and, regardless, this would not show that Dr. Lyren knew of a "risk of further serious injury." Moreover, to the extent that Barnes alleges that Dr. Lyren was negligent or committed medical malpractice, such conduct, even if true, does not violate the Eighth Amendment. *See Peterson v. Willie*, 81 F.3d 1033, 1038 (11th Cir. 1996) (the questioned conduct or omission must involve "something more than a medical judgment call" to constitute deliberate

indifference); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Mere medical malpractice . . . does not constitute deliberate indifference."). For these reasons, the claims against Dr. Lyren are due to be dismissed.

**D. Day Shift Deputies**

Finally, the magistrate judge recommends the dismissal of all claims against the "day shift deputies" because, as an initial matter, fictitious party pleading generally is not permitted in federal court. Doc. 15 at 13 (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). *See also Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Alternatively, even if Barnes had identified specific deputies, he fails to plead conduct rising to the level of a constitutional violation and, instead, his allegations (at most) give rise to an inference of negligence. Doc. 15 at 13. Barnes does not address the magistrate judge's recommendation regarding "fictitious parties," but objects on the basis that the deputies "stationed in booking failed to promptly get me an ice pack as ordered by the on-duty nurse." Doc. 16 at 3. This objection is **OVERRULED**, because Barnes fails to allege that any particular deputy subjectively knew that Barnes was at risk of serious physical harm or was suffering. *See Fuller v. Fife*, No. 4:15-cv-02302-LSC-TMP, 2016 U.S. Dist. LEXIS 72566, at *15 (N.D. Ala. Mar. 11, 2016), *adopted by* 2016 U.S. Dist. LEXIS 72404 (N.D. Ala. June 3, 2016) (quoting *Hudson v. McMillian*, 503 U.S. 1, 19 (1992)) ("As a prisoner, the plaintiff is not

entitled to medical services *on demand*. 'Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.'") (some internal quotation marks omitted, emphasis added). Accordingly, any claims against the "day shift deputies" are due to be dismissed.

### III.   CONCLUSION

For these reasons, after a *de novo* review of the file, the court concludes that the magistrate judge's Report is due to be **ADOPTED** and her recommendation **ACCEPTED**. The court will enter a separate order contemporaneously herewith.

**DONE** the 12th day of March, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE